## Artemas Lee & another *vs.* Inhabitants of Templeton

Stock in trade of a partnership, employed in manufacturing or in any of the mechanic arts in a town in which the firm have not their principal place of business, but in which they hire or occupy a manufactory, shop, store or wharf, may be taxed in that town, as one " other than where the owners reside," under the Rev. Sts. *c.* 7, § 10, *cl.* 1, and § 13, and *St.* 1839, *c.* 139, § 1, although one of the partners resides in that town.

To constitute an occupation, within the meaning of the Rev. Sts. *c.* 7, § 10, *cl.* 1, and *St.* 1839, *c.* 139, § 1, of a manufactory, shop, store or wharf, there must be an actual possession, use and efficient control of it—such an occupation as one who owns or hires would ordinarily have.

Merchants, sending goods to a manufactory not owned by them, in a town in which they do not reside, to be passed through one of the processes of manufacturing by one who contracts to do that process, and who, in order to secure a continuance of their custom, permits them to sort and count the goods there before finishing, and to pack them there afterwards, do not thereby " occupy " the manufactory, within the meaning of the Rev. Sts. *c.* 7, § 10, *cl.* 1, and *St.* 1839, *c.* 139. § 1, so as to be liable to taxation for such goods in the town where the manufactory is situated.

Whether partners, taxed by one entire assessment, in a town in which they have no place of business, for stock in trade employed there in a manufactory occupied by them, and for other personal property, can, if the tax on the other personal property is illegal, recover back by action the whole tax, or at least that part of it, *quære.*

THOMAS, J. This is an action of contract, brought to re-cover of the town of Templeton the amount of four several taxes assessed upon and collected of the plaintiffs in the years 1851, 1852, 1853 and 1854.

The plaintiffs were partners under the firm of Lee & Bassett; Lee residing in Templeton, and Bassett in Phillipston. For the years 1851 and 1852, the firm kept a country store in Phillipston, and for the years 1853 and 1854 in Athol.

The defendants contended that the plaintiffs were liable to taxation in Templeton under the provisions of the Rev. Sts. *c.* 7, § 10, *cl.* 1, and the *St.* of 1839, *c.* 139, § 1. These provisions are as follows : " All goods, wares and merchandise, or any other stock in trade, including stock employed in the business of any of the mechanic arts, in towns within the State, other than where the owners reside, shall be taxed in those towns, if the owners hire or occupy stores, shops or wharves therein, and shall not be taxable where the owners reside." " All stocks in trade, including stock employed in the business of manufactur-ing, or of any of the mechanic arts, in towns within the State, other than where the owners reside, shall be taxed in those towns, if the owners hire or occupy manufactories, stores, shops or wharves therein, whether the said stocks in trade, or the goods, wares and merchandise, or other property composing or forming a part of the same, are within said towns on the first day of May of the year when the tax is made, or elsewhere."

The plaintiffs contended that the liability of the firm to taxa-tion was under § 13 of *c.* 7 of the Rev. Sts., which provides that " partners in mercantile or other business, whether residing in the same or different towns, may be jointly taxed, under their partnership name, in the town where their business is carried on, for all the personal property employed in such business; and if they have places of business in two or more towns, they shall be taxed in those several towns, for the proportions of property employed in such towns, respectively ; and, in case of being so jointly taxed, each partner shall be liable for the whole tax."

The Rev. Sts. *c.* 7, § 9, provide a general rule as to the place of the taxation of personal property, which is, that it shall be as-

sessed to the owner in the town where he shall be an inhabitant on the first day of May. The provisions upon which the parties severally rely constitute exceptions to this general rule.

The parties were at issue as to the nature of the business done by the firm of Lee & Bassett at Templeton.

The defendants offered evidence tending to show " that the plaintiffs occupied a large building in the town of Templeton where they, for several years, were accustomed to receive large quantities of palm leaf hats, in an imperfect state, which they purchased in various parts of the country, and which were delivered to them at that place; that they occupied said building for the reception and storing of said hats; and that there the hats were sorted by the plaintiffs, counted, bleached, pressed, and put up in boxes, under their superintendence, and from that place were carried to market from time to time, in their perfected condition; that it was a branch of business called the foreign palm leaf business, which was independent of their store business, of their domestic hat business, and of all other business done by the plaintiffs elsewhere."

The plaintiffs introduced evidence which, they contended, established the following facts: " The plaintiffs, with the country store kept by them at Phillipston, and subsequently in Athol, connected the business of dealing in and preparing palm leaf, and also that of dealing in, and preparing for market, palm leaf hats. The books of the plaintiffs were kept at Phillipston and Athol, where their post-office direction was, where their notes were dated, and where settlements were made. The business of dealing in palm leaf hats was divided into two parts, for convenience, by the plaintiffs; one called the domestic hat business, which consisted of the taking hats for goods, palm leaf, &c. over the counter of their store; and the other, of the foreign hat business, so called, which consisted of hats purchased of them in various parts of the country. It was necessary, in order that the hats should be prepared for market, that they should be bleached and pressed; and this operation was performed at Templeton, the domestic hats being sent from Phillipston, and subsequently from Athol, counted and sorted, and the foreign hats

49*

being sent from the places where they were purchased, and sorted and counted at the mill in Templeton by one of the plaintiffs. The mill for bleaching and pressing was owned by parties other than the plaintiffs, and no price was paid by the plaintiffs for thus sorting and counting, nor for storage of such hats as remained unfinished at the end of the season, (of which there were always some,) other than the amount paid for bleaching and pressing, which was the same as that paid by other persons who had hats bleached and pressed at the mill."

Lee, one of the partners, residing in Templeton, the first question which arose was, whether the property taxed was stock in trade in a town other than that where the owners resided. It was the property of the firm, and taxed as such. The owners of the property did not reside in Templeton. To say that Lee was the owner of the property would be to say he might be assessed for the whole amount under the general provision of the Rev. Sts. *c.* 7, § 9. To ascertain the interest of each member of the firm in the partnership property, and tax such interest separately, would be extremely difficult, if not impracticable. It is to obviate this difficulty, that the provisions contained in the Rev. Sts. *c.* 7, § 13, were made. We think therefore that the learned judge was right in holding that the plaintiffs, so far as the question of ownership was concerned, and if they were in other respects within the provisions of the Rev. Sts. *c.* 7, § 10, *cl.* 1, and the *St.* of 1839, *c.* 139, § 1, were liable to taxation in Templeton. It was not a case where the owners of the property resided in Templeton, though Lee, a member of the firm which owned the property, resided there.

The next question was, whether the plaintiffs, within the meaning and intendment of the *St.* of 1839, *c.* 139, § 1, hired or occupied a store or manufactory in Templeton. Upon the question what, within the meaning of the statute, constituted occupation, the plaintiffs requested the instruction of the court, not as an abstract proposition, but as adapted to the case developed by the evidence, to the facts as they might be found by the jury.

They asked the court to instruct the jury " that if Lee & Bassett sent their hats to the mill at Templeton to be dressed, as

one of the processes of manufacturing, and the mill was owned or hired by the one who contracted to do the dressing, and, as an inducement to them to give him a part of or all their hat-dressing, he permitted them to come and sort or count their hats there, by the way of a license to do so, and this was necessary to be done before the work of the finishing began, and, if any hats remained unfinished at the end of the season, he suffered them to remain in the mill until the next season, with a view of then finishing them, and if the owner or hirer of the mill had a right to put an end to this arrangement whenever he pleased, it would not be such a hiring or occupancy of a manufactory or store, as to render them liable to be taxed on account of the same." The instructions prayed for would, we think, upon the facts assumed, have been correct; and the bill of exceptions finds there was evidence tending to establish such facts.

But the presiding judge was not bound to give his instructions in the form or words of the plaintiffs' prayer, and if the instructions given were right, and covered the ground upon which instructions had been asked, there would be no cause of exception. But in looking at the instructions given, we think they do not meet these requirements.

Upon the matter of occupation the court instructed the jury that it must be shown " that the plaintiffs occupied a manufactory, store or shop in Templeton, in the respective years when the taxes were assessed. But the occupancy by the plaintiffs need not be of the whole manufactory, nor need it be an exclusive occupancy of any part of the manufactory. It would be sufficient if the plaintiffs occupied a portion of the manufactory by consent of the persons who hired such building in considera-tion of the plaintiffs' custom, though such occupancy was by license of the persons who hired the manufactory, and though such license was subject to be revoked at any time during the year. It would be sufficient, if the plaintiffs occupied the manufactory in fact, though it was without the consent of the owners of the manufactory."

It is quite doubtful whether there could be an occupation, within the meaning of this statute, with all the limitations here

indicated, and especially the being in by a mere license of the tenant, which might at any time be revoked.

But the stronger objection to these instructions is that they do not cover the point to which the prayer for instructions was directed, to wit, what was meant by occupancy in the statute.

The implied license to go into the mill, given to every person who carried goods to be bleached or pressed there, was certainly no occupation. An additional license to come into the factory to count the hats before they were bleached, and to pack them for the market after they were finished, would not make the plaintiffs occupants. They must be packed by somebody, and whether the manufacturer did it, or permitted the owners to do it, was quite immaterial. Add the fact, that the goods remaining unfinished at the end of the season were suffered to remain in the mill until the next season for the purpose of being then finished, and that this was done with the express consent of the manufacturer, with a view of securing employment of the plaintiffs in bleaching and pressing; and the facts, taken together, fall far short of an occupation, within the meaning of the statute. And so, in substance, the jury should have been instructed. They should have been also instructed that he only could be understood to occupy an estate, who is in the actual possession, and has the use and efficient control of it—such an occupation as one who owns or hires would ordinarily have.

If the learned judge declined to instruct the jury as requested by the plaintiffs, because, as was suggested at the argument, the facts as proved were not fully stated in the prayer for instructions, the instructions actually given are open to the objections that they do not cover the questions at issue between the parties, and do not explain to the jury what, under the statute, would constitute occupation. And we fear the jury may have been misled by the instructions given, because in the evidence, so far as reported, it has been difficult to see on what ground the jury could have found that the plaintiffs were the occupants of the manufactory.

It is said by the counsel for the defendants that if the plaintiffs are right in their interpretation of the statute, and if their

property was made liable to taxation according to the provisions of § 13 of the Rev. Sts. *c.* 7, instead of § 10 of the same chapter and the *St.* of 1839, the error of the court was unimportant there being no material difference between the provisions of the statutes referred to, so far as they affect this case, and that the instructions to the jury were alike applicable to either section of the earlier statute, and the act of 1839.

It is perhaps a sufficient answer to that suggestion, that the whole case seems to have proceeded upon the ground that the plaintiffs were liable to be taxed, if at all, under the *St.* of 1839, *c.* 139, and that, if the question had been whether, under the Rev. Sts. *c.* 7, § 13, the plaintiffs had distinct places of business in two towns, one of which was Templeton, other evidence might have been offered and other instructions required.

In either case, the instructions given as to the occupation of a store or manufactory for the transaction of the business would be open to exceptions.

In view of the recent decisions of this court in *Huckins* v. *Boston*, 4 Cush. 543, *Little* v. *Cambridge*, 9 Cush. 298, and *Field* v. *Boston*, 10 Cush. 65, the plaintiffs should have the opportunity of fully trying their liability under § 13.

It also appeared at the trial that the taxes for 1853 and 1854 were assessed to the plaintiffs in this form : " Palm leaf hats and money due more than owing." The plaintiffs requested the court to instruct the jury that the plaintiffs were entitled to recover back the taxes, or at least such portion thereof as was assessed for money due more than owing. But the court declined so to do, and instructed the jury that, although that part of the tax was irregular, it could not be recovered back in this action.

The question as to the effect of this form of taxation in those two years, is one of some difficulty, and has not been determined. It is not covered by the case of *Osborn* v. *Danvers*, 6 Pick. 98, or the more recent cases of *Howe* v. *Boston*, 7 Cush. 273, *Lincoln* v. *Worcester*, 8 Cush. 55, and *Bourne* v. *Boston*, 2 Gray, 494 ; as in each of those cases the person assessed was an inhabitant of the town or city, and liable to taxation generally

The question may possibly have a different aspect if the tax was assessed under the Rev. Sts. *c.* 7, § 13, from what it would nave if assessed under the *St.* of 1839, *c.* 139.

*New trial in this court.*

*E. Washburn & C. Devens, Jr.* for the plaintiffs.

*C. Allen & N. Wood,* for the defendants.

A trial was had at April term 1857, and resulted in a verdict for the plaintiffs, on which judgment was rendered.